ORDERED.

Dated:  June 30, 2015

_____
Karen S. Jennemann
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| WILLIAM G. CURTIS and ) | Case No. 6:13-bk-08201-KSJ |
| LAURA L. CURTIS, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |

### MEMORANDUM OPINION GRANTING TRUSTEE'S MOTION FOR TURNOVER

The Chapter 7 Trustee, Lori Patton, seeks to compel the Debtors, William and Laura Curtis, to turn over $4,700 to their bankruptcy estate for the value of unencumbered, nonexempt personal property the Debtors still hold after converting their case from a Chapter 13 to a Chapter 7.[1] The Trustee argues the assets are property of the estate under § 348(f) of the Bankruptcy Code.[2] Debtors contend that the assets are not property of the estate because, under § 1327, the order confirming their Chapter 13 plan vested estate property in the Debtors.  The Court finds that § 348(f) controls and orders the Debtors to turn the assets over to the Trustee.

---

[1] Motion for Turnover (Doc. No. 60); Debtors' Response (Doc. No. 61); Chapter 13 Trustee's *Amicus* (Doc. No. 70).
[2] All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et seq*.

Debtors filed their Chapter 13 petition on July 1, 2013.[3] The Court confirmed their Chapter 13 plan on February 24, 2014,[4] and the Debtors modified their home mortgage in June 2014. After using the Chapter 13 process to negotiate a mortgage modification, the Debtors no longer saw the need to continue their repayment obligations and instead converted their case to Chapter 7.[5]

At the 341 meeting of creditors held in the converted case, the Chapter 7 Trustee discovered that the Debtors still possessed tools and supplies listed on their schedules relating to Mr. Curtis's business (the "Tools and Supplies"). After claiming the Tools and Supplies as property of the estate, the Trustee asked the Debtors to pay $4,700 to the bankruptcy estate representing their nonexempt value in lieu of liquidating the assets.[6] The Trustee and the Debtors entered into an agreement under which the Debtors would pay the Trustee over ten months.[7]

The Debtors later changed their mind and repudiated the "buy back" agreement. The Trustee does not seek to enforce the agreement, but instead moves to force the Debtors to turn over the Tools and Supplies or immediately pay their value to the estate.[8] Debtors object to the Trustee's request, arguing that their Chapter 13 confirmation order vested in them all estate property, including the Tools and Supplies. They further argue that to allow conversion to pull vested property back into their bankruptcy estate would effectively revoke the Chapter 13 plan confirmation order, an impermissible result under the Bankruptcy Code.

---

[3] Doc. No. 1.
[4] Doc. No. 37.
[5] Doc. No. 53.
[6] On their Schedule B, the Debtors listed "tools used in business" with a value of $5,000—with a claimed exemption of $480—and "supplies" used in Mr. Curtis's business valued at $500. Schedule B (Doc. No. 18).
[7] The payment amount, $4,692, represented the Tools and Supplies' claimed value minus the Debtors' claimed $480 exemption and $327.90 the Debtors already paid to priority and unsecured creditors through their Chapter 13 plan. Ex. A to Trustee's Motion for Turnover (Doc. No. 60).
[8] Doc. No. 60.

Debtors voluntarily converted their bankruptcy case from Chapter 13 to Chapter 7. Section 348(f) of the Bankruptcy Code distinctly considers the effect of conversion from a Chapter 13 case:

> [W]hen a case under chapter 13 of this title is converted to a case under another chapter under this title—
>
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion . . . .[9]

The plain language of § 348(f) provides that property of the estate in a case converted from Chapter 13 has "two characteristics: (1) the property must have been property of the estate on the date of the petition; and, (2) the property must have remained in the possession or control of the debtor on the date of conversion."[10] "In other words, property of the estate in the Chapter 7 case 'is determined according to the filing date of the original Chapter 13 petition.'"[11] Debtors do not dispute that the Tools and Supplies were property of the estate on the petition date or that they still possessed the property on the date of conversion.

Rather, the Debtors contend that § 1327(b) and their Chapter 13 confirmation order operate to circumvent the effects of § 348(f). Section 1327(b) states: "Except as otherwise provided in the plan or the order confirming plan, the confirmation of a plan vests all of the property of the estate in the debtor."[12] Thus, the Debtors argue that because the Tools and Supplies vested in them upon confirmation of their Chapter 13 plan, § 348(f) cannot now bring that property back into their bankruptcy estate upon conversion. This brings us to the issue

---

[9] 11 U.S.C. § 348(f).
[10] *In re John*, 352 B.R. 895, 899 (Bankr. N.D. Fla. 2006).
[11] *Id.* (quoting *In re Stamm*, 222 F.3d 216, 218 (5th Cir. 2000)); *accord In re Simmons*, 520 B.R. 136, 143 (Bankr. M.D. Fla. 2014).
[12] 11 U.S.C. § 1327(b).

before the Court: Does § 348(f) of the Bankruptcy Code pull property vested in the Debtors by a Chapter 13 confirmation order back into the bankruptcy estate upon conversion?

The Court, with little difficulty, answers the question in the affirmative. In *In re John*,[13] the bankruptcy court rejected the exact argument advanced by the Debtors, deeming the argument "meritless" and stating:

> The Debtors are correct that the Property did indeed vest in the Debtors upon confirmation of their plan—in Chapter 13. However, this is no longer a Chapter 13 case. Once a case is converted from a Chapter 13 to a Chapter 7, the provisions of a Chapter 13 that define the effect of a plan's confirmation have no application in determining the composition of the Chapter 7 estate. It is elementary that, upon conversion, the provisions of the chapter to which the case is converted apply, while the provisions of the chapter from whence it came cease to be determinate, unless the Code provides otherwise. That is the whole concept of conversion. Moreover, reading § 1327 as determining the property of the estate after conversion to Chapter 7 would render § 348 entirely superfluous.[14]

This interpretation accords with the Supreme Court's recent comments on conversion from Chapter 13 to Chapter 7 in *Harris v. Viegelahn*.[15] Although *Harris* considered a different issue relating to conversion, the Court rejected the notion that a court cannot stray from the Chapter 13 plan's binding effect after conversion.[16] The Court reasoned that "[w]hen a debtor exercises his statutory right to convert, the case is placed under Chapter 7's governance, and no Chapter 13 provision holds sway."[17] After the debtor converted to Chapter 7, "the Chapter 13 plan was no longer 'binding.'"[18] Similarly, after the Debtors in this case converted to Chapter 7 their Chapter 13 plan and the related confirmation order was no longer binding, and § 1327 became ineffectual.

---

[13] 352 B.R. 895 (Bankr. N.D. Fla. 2006).
[14] *Id.* at 900.
[15] *Harris v. Viegelahn*, 575 U.S. ___, 135 S. Ct. 1829, 2015 WL 2340847 (2015).
[16] *Id.* at 1838-39.
[17] *Id* at 1838.
[18] *Id.*

By the same token, applying § 348(f) does not act to impermissibly "revoke" the Debtors' Chapter 13 confirmation order as they contend. Debtors freely abandoned any benefits given by their confirmation order when they converted their case to Chapter. They were relieved of any further payment obligation to the Chapter 13 Trustee but they were encumbered by all the restrictions and rules applicable in a Chapter 7 case, like § 348(f). A debtor's confirmed Chapter 13 plan is not a final judgment and has no binding effect upon conversion to a Chapter 7 case.[19] A Chapter 13 plan is a "court-supervised bargain brokered between debtors and their creditors with the assistance of a Trustee."[20] In addition to other benefits, debtors are able to retain their property in return for giving up their future earnings for a period of time. "Considering the substantial benefits Chapter 13 debtors enjoy in exchange for paying their wages into the Chapter 13 plan, a debtor who fails to make the required payments should not be able to keep what was bargained for when the creditors do not get what is due."[21]

A debtor cannot on the one hand freely abandon his or her obligations under a Chapter 13 plan by converting to Chapter 7, and, on the other hand, seek shelter behind the plan's supposed binding effect. As the Supreme Court emphasized in *Harris v. Viegelahn*, the main purpose of § 348(f) is to put converting debtors into a similar position as they would have been if they initially had filed under Chapter 7.[22] To allow the Debtors in this case to retain their property would encourage rampant abuse of Chapter 13 to avoid one of the primary tenants of Chapter

---

[19] *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 379–80 (D.N.J. 2006); *accord In re Dorsey*, 505 F.3d 395, 399 (5th Cir. 2007) (holding "[i]t would be inequitable, however, to bind a creditor to a Chapter 13 plan where the debtor has failed to fulfill his obligations under the plan or where the debtor has abandoned the plan by exercising his right to convert from Chapter 13 to Chapter 7."); *In re Michael*, 436 B.R. 323, 329 (Bankr. M.D. Pa. 2010) (holding that "in the case before me, Debtor's conversion notice ended the chapter 13 case, effectively vacating the order confirming the chapter 13 plan and depriving it of any *res judicata* effect.") *aff'd sub nom. DeHart v. Michael*, 446 B.R. 665 (M.D. Pa. 2011) *aff'd sub nom. In re Michael*, 699 F.3d 305 (3d Cir. 2012).
[20] *In re John*, 352 B.R. 895, 903 (Bankr. N.D. Fla. 2006).
[21] *Id.*
[22] *Cf. Harris v. Viegelahn*, 135 S. Ct. 1837-38 (reasoning debtors are entitled to undispersed funds held by the Chapter 13 trustee upon conversion because the Court found "nothing in the Code denying debtors funds that would have been theirs had the case proceeded under Chapter 7 from the start.").

7—offering up nonexempt property to the Trustee for liquidation in exchange for a discharge of all debts. Debtors could simply file under Chapter 13, confirm a plan, then convert to Chapter 7 and receive discharge of their debts without fulfilling either the payment obligations of Chapter 13 *or* the turnover obligations of Chapter 7. This result is inequitable and impermissible under the Bankruptcy Code.

All cases cited by the Debtor fail to weigh in on the issue. *In re Kelly*[23] considered a Chapter 13 plan's binding effect *after* the debtors fulfilled all their repayment obligations. *In re Markham*,[24] whose reasoning was rejected by *Harris v. Viegelahn*,[25] considered how to distribute undispersed plan payments when a debtor converts from Chapter 13 to Chapter 7. *Marhkam* does contain some discussion refuting the notion that conversion vacates the Chapter 13 confirmation order, but instead construes the effect of conversion as a breach of contract by the debtors.[26] Such a construction is consistent with the Court's ruling. Debtors breached the "contract"—the Chapter 13 plan and confirmation order—by converting and refusing to make their payments. Therefore, they no longer are entitled to the benefits of Chapter 13 and their plan, such as keeping nonexempt property.

Debtors also argue legislative history supports their view. The Court does not need to resort to legislative history to carry out the plain provisions of § 348(f). Courts "do not start from the premise that [the statutory] language is imprecise. Instead, we assume that in drafting legislation, Congress said what it meant."[27] And, "[g]iven [a] straightforward statutory command, there is no reason to resort to legislative history."[28] Section 348(f) of the Bankruptcy

---

[23] 358 B.R. 443 (Bankr. M.D. Fla. 2006).
[24] *In re Markham*, 504 B.R. 1 (Bankr. D. Mass. 2013).
[25] *See Viegelahn*, 135 S. Ct. 1829.
[26] *Markham*, 504 B.R. at 7.
[27] *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) (quoting *United States v. LaBonte*, 520 U.S. 751, 757, 117 S. Ct. 1673, 1677, 137 L. Ed. 2d 1001 (1997)).
[28] *Id.* (quoting *United States v. Gonzales,* 520 U.S. 1, 6, 117 S. Ct. 1032, 1035, 137 L. Ed. 2d 132 (1997)).

Code clearly states what property becomes property of the estate when a debtor converts from Chapter 13 to Chapter 7, so the need to resort to legislative history does not arise. What is more, the legislative history cited by the Debtors does nothing to advance their argument.[29]

Last, statutory construction principles to not aid the Debtor. The general/specific canon of statutory interpretation cited by the Debtors actually cuts *against* their arguments. As the Debtors correctly note, "[a] general statutory rule usually does not govern unless there is no more specific rule."[30] The cannon applies where a "general authorization and a more limited, specific authorization exist side-by-side. There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'"[31] Debtors characterize § 1327(b) as more specific than § 348(f). The Court disagrees. Section 348(f) specifically defines property of the estate in cases converted from Chapter 13, whereas Section 1327(b) generally applies to all Chapter 13 cases. Section 348(f)'s scope is more specific and tailored to the factual circumstances in this case: conversion.

The Tools and Supplies are property of the Debtors' bankruptcy pursuant to § 348(f) of the Bankruptcy Code and subject to administration by the Chapter 7 Trustee. The Trustee's motion for turnover is granted. A separate Order consistent with this Memorandum Opinion shall be entered simultaneously.

### ###

---

[29] *See* H.R. Rep. 103-835, 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366. The legislative history states that the primary impetus in enacting § 348(f) was to clarify how property acquired by Chapter 13 debtors *post-petition* was to be treated upon converting to Chapter 7. *Id*. It also expressly adopts the reasoning of courts that "held that when the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed." *Id.* Debtors in this case owned the Tools and Supplies when they originally filed under Chapter 13.

[30] *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524, 109 S. Ct. 1981, 1992, 104 L. Ed. 2d 557 (1989).

[31] *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071, 182 L. Ed. 2d 967 (2012) (quoting *D. Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 208, 52 S. Ct. 322, 76 L. Ed. 704 (1932)).

Lori Patton, Chapter 7 Trustee, is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.